[Docket No. 54.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|   |   |
|---|---|
| RIYA DEV CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AMGUARD INSURANCE COMPANY,<br><br>　　　　　Defendant. | Civil No. 22-6415 (RMB-EAP)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

　　**THIS MATTER** comes before the Court upon the Motion for Summary Judgment filed by Defendant AmGUARD Insurance Company ("Defendant" or "AmGUARD"). [Docket No. 54.] Plaintiff Riya Dev Corporation ("Plaintiff" or "Riya Dev") opposes the motion. [Docket No. 57.] The Court has considered the parties' submissions[1] without oral argument pursuant to Federal Rule of Civil

---

[1]　　The parties' submissions are referred to herein as follows: (i) Defendant's Brief in Support of Summary Judgment, [Docket No. 54-2 ("Def.'s Br.")], its Statement of Undisputed Material Facts, [Docket No. 54-1 ("SOMF")], its Reply Brief in Further Support of its Motion for Summary Judgment, [Docket No. 58 ("Reply Br.")], and its Responses to Plaintiff's Counterstatement of Undisputed Material Facts, [Docket No. 58-1 ("Def.'s RSOMF")]; and (ii) Plaintiff's Brief in Opposition to Summary Judgment, [Docket No. 57 ("Pl.'s Br.")], its Counterstatement of Undisputed Material Facts, [Docket No. 57-2 ("CSOMF")], and its Responses to Defendant's SOMF, [Docket No. 57-1 ("Pl.'s RSOMF")].

Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, the Court will **GRANT** Defendant's Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

### A. The Policy

Since 2011, Riya Dev Corporation has been the owner and operator of a motel in Cinnaminson, New Jersey. [SOMF ¶¶ 7–9; Pl.'s RSOMF ¶¶ 7–9.] The motel is comprised of two buildings—one with a shingled asphalt roof, and one with a non-shingled roof. [SOMF ¶ 10; RSOMF ¶ 10.] Hiren Patel controls Riya Dev and testified at his deposition that he never made any repairs to the roof after purchasing the property in 2011. [SOMF ¶ 7; RSOMF ¶ 7; Certification of Brandon L. Sipple, in Support of Defendant's Motion for Summary Judgment ("Sipple Certif."), Ex. D ("Patel Depo") at 8:17–17:6.] Despite Patel's testimony, however, it is undisputed that, by 2020, the roof was covered in patches, indicating prior repairs. [SOMF ¶¶ 24–25; RSOMF ¶¶ 24–25.]

The motel is covered by a business owner's insurance policy issued by Defendant AmGUARD (the "Policy"). [SOMF ¶ 1; Pl.'s RSOMF ¶ 1.] In relevant part, the Policy affords coverage for "direct physical loss of or damage to Covered Property at the premises … caused by or resulting from any Covered Cause of Loss." [Sipple Certif., Ex. C at AMGUARDP000074.] A "Covered Cause of Loss" is any "[r]isk[] of direct physical loss unless the loss is [e]xcluded … or … [l]imited." [*Id.* at AMGUARDP000075.] The Policy excludes coverage for damage to "[t]he interior of any building or structure caused by or resulting from rain … whether driven by wind

2

or not, unless: … [t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain … enters[.]" [*Id*.] Also excluded under the Policy, as relevant here, are losses caused by or resulting from (i) "[w]ear and tear" (the "Wear and Tear Exclusion"); (ii) "[c]ontinuous or repeated seepage or leakage of water, or the presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more" (the "Long-Term Moisture Exclusion"); and (iii) "[f]aulty, inadequate or defective … [m]aintenance" (the "Maintenance Exclusion"). [*Id.* at AMGUARDP000091–000092.]

B.     **The 2020 Claim**

Following a December 2020 storm, Plaintiff submitted a claim (the "2020 Claim") to AmGUARD to recover for damage to the motel's roof and associated water damage due to leakage through the roof. [SOMF ¶ 13; Pl.'s RSOMF ¶ 13.] Plaintiff alleged that storm winds caused the damage to the roof. [*Id*.] AmGUARD retained a third-party adjuster, Raphael & Associates ("Raphael") to investigate the 2020 Claim. [SOMF ¶ 13; Pl.'s RSOMF ¶ 13.] Raphael retained an engineering firm, Rimkus Consulting Group ("Rimkus"), which concluded that the interior leaks were not caused by storm winds. [SOMF ¶ 16; Pl.'s RSOMF ¶ 16.] Rather, Rimkus concluded that the motel "sustained water damage due to incremental, repetitive moisture intrusion issues through the aged roof assembly and unsealed openings in the building cladding" rather than as a result of a "recent, single, or sudden weather event." [SOMF ¶¶ 14, 17; Pl.'s RSOMF ¶¶ 14, 17.] As a result, Raphael issued a letter denying the 2020 Claim citing the Policy's Maintenance, Wear and Tear, and Long-

3

Term Moisture Exclusions. [SOMF ¶ 17; Def.'s RSOMF ¶ 17.] In June 2021, Plaintiff and AmGUARD agreed to renew the Policy. [CSOMF ¶ 37; Def.'s RSOMF ¶ 37.]

### C. Hurricane Ida and the 2021 Claim

In August 2021, Hurricane Ida made landfall in New Jersey. [SOMF ¶ 18; Pl.'s RSOMF ¶ 18.] Plaintiff submitted a new claim to AmGUARD, (the "2021 Claim") alleging that high wind speeds from Hurricane Ida damaged the roof and caused associated water damage inside the motel. [SOMF ¶ 18; Pl.'s RSOMF ¶ 18.] Raphael again served as the third-party adjuster for the 2021 Claim and retained Keystone Experts and Engineers, LLC ("Keystone") as its engineer. [SOMF ¶¶ 29, 31; Pl.'s RSOMF ¶¶ 29, 31.] Although Raphael initially observed that some coverage might be available for damage to a portion of the roof, it denied the 2021 Claim. [SOMF ¶¶ 33, 35; Pl.'s RSOMF ¶¶ 33, 35.] Citing Keystone's findings, Raphael found that the roof did not exhibit wind damage, or any other damage consistent with a single weather event. [*Id.*] Instead, and consistent with the denial of the 2020 Claim, it found that the roof exhibited signs of "age-related deterioration and terminal cracking" caused by wind damage "over the life of the" roof. [SOMF ¶ 36; RSOMF ¶ 36.] The shingles themselves were found to be "more susceptible to less-than-design-speed wind because of age-related deterioration and weathering of the sealant strips" and the investigation did not reveal a "storm created opening which would have caused the interior water seepage from the rain." [*Id.*]

4

## II.    PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in the Superior Court of New Jersey for wrongful denial of the 2021 Claim. [Docket No. 1 ("Notice of Removal").] Plaintiff does *not* challenge the denial of the 2020 Claim. Defendant timely removed to this Court based on the parties' diversity of citizenship, *see* 28 U.S.C. § 1332(a),[2] and upon receipt of Plaintiff's statement of damages which claimed an amount in controversy of $432,045.05. [Notice of Removal ¶ 36.] Following arbitration proceedings in an attempt to resolve this matter, Plaintiff requested a trial de novo under Local Civil Rule 201.1(h). The parties proceeded to discovery in this Court and exchanged three expert reports.

### A.    Expert Reports

#### 1.    *The Altschule Report*

Plaintiff retained Howard Altschule a Certified Consulting Meteorologist. [Sipple Certif., Ex. R ("Altschule Report").] Altschule's report made no findings regarding whether high wind speed during Hurricane Ida caused the damage to the motel's roof. He did estimate, however, that wind speeds during the Hurricane reached approximately 69 miles per hour but only 6.6 miles south-southwest of the incident location. [*Id*. at 61–62.] The wind speed at the location of the motel was approximately 38 to 43 miles per hour. [*Id.*]

---

[2]     Plaintiff is a corporation incorporated in New Jersey and with its principal place of business in Cinnaminson, New Jersey. [Notice of Removal ¶ 4.] Defendant is a corporation incorporated in Pennsylvania with its principal place of business in Pennsylvania. [Notice of Removal ¶ 45.]

5

### 2.  *The Halkiadakis Report*

Plaintiff also retained an engineering expert, Basile G. Halkiadakis. [Sipple Certif., Ex. S ("Halkiadakis Report").] Halkiadakis concluded that the proximate cause of the damage to Plaintiff's property was high wind speeds from Hurricane Ida. [*Id.* at 2.] Specifically, he noted that the motel's asphalt roof shingles "sustained functional and latent damage" consistent with "excessive wind loads" which "diminished the water-shedding capability of the roofing system and reduced the expected long-term service life of the asphalt shingles." [*Id.*] The wind damage to the roofing system, he determined, resulted in water penetration to the motel's interior. [*Id.* at 3.] It is undisputed, however, that Halkiadakis did not consider the roof's condition prior to Hurricane Ida, including its existing damages and long-standing maintenance issues as detailed in the denial of the 2020 Claim. [SOMF ¶ 45, 48, 51; Pl.'s RSOMF ¶ 45, 48, 51; CSOMF ¶ 40; Def.'s RSOMF ¶ 40.]

### 3.  *The Lilienfeld Report*

In response to the Halkiadakis Report, Defendant's retained Isaac G. Lilienfeld of Keystone. [Sipple Certif., Ex. T ("Lilienfeld Report").][3] In his report, Lilienfeld noted that while the roof's asphalt shingles typically have a maximum wind resistance of 60 miles per hour, the poor condition of the shingles over the life of the roof "made them vulnerable to wind events well below 60 mph." [Lilienfeld Report at 2.] He also reiterated his earlier findings made following the 2021 Claim denial that the roof

---

[3]  Lilienfeld also prepared the initial engineering report relied on by Raphael to deny the 2021 Claim. [SOMF ¶ 32; Pl.'s RSOMF ¶ 32.]

shingles "exhibited significant deterioration indicative of an installation in excess of 20 years, which is the typical service life expectancy and warranty life of this type of shingle" and that "the significant embrittlement" of the shingles supported a conclusion that the damage to the roof was the result of wind over the life of the roof rather than a singular weather event. [*Id.* at 3.] Indeed, Halkiadakis's expert report also noted the brittle quality of the roof's shingles. [Halkiadakis Report at 28; SOMF ¶ 50; Pl.'s RSOMF ¶ 50.]

### B. The Parties' Arguments

Defendant moved for summary judgment. It argues that Plaintiff has not shown that the loss or damage to the roof following Hurricane Ida fell within the Policy's scope because Plaintiff cannot demonstrate that the loss was fortuitous. [Def.'s Br. at 12–13.] And even if it could, Defendant argues, Plaintiff cannot establish that the damage to the roof constituted a Covered Cause of Loss or that, if it was a Covered Cause of Loss, that the loss was not barred by the Maintenance, Wear and Tear, and/or Long-Term Moisture Exclusions. [*Id.* at 15–21.] Finally, Defendant argues that Plaintiff should be precluded from relying on the Halkiadakis report which constitutes an impermissible net opinion by an expert who did not consider earlier damage to the roof as noted in the unchallenged denial of the 2020 Claim. [*Id.* at 22.]

Plaintiff opposes. It argues that it has established a fortuitous loss resulting from damage sustained during Hurricane Ida because there was observable damage to the motel's roof following the Hurricane. [Pl.'s Br. at 5–7.] And, Plaintiff argues, Defendant cannot point to any relevant exclusion under the Policy because

Halkiadakis's report creates a genuine dispute of material fact regarding whether wind was the proximate cause of loss. [*Id.* at 8–13.] Finally, Halkiadakis's report should be considered by the Court, argues Plaintiff, because Halkiadakis's failure to consider the 2020 Claim is irrelevant to whether Hurricane Ida winds proximately caused damage to the motel roof. [*Id.* at 13–15.]

## III.  LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n.2 (3d Cir.1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. *Anderson*, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a

8

"fair-minded" jury could "reasonably" decide.'" *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting FED. R. CIV. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

## IV.   ANALYSIS

Whether Plaintiff may recover under the Policy is a question of contract interpretation. *See Sosa v. Massachusetts Bay Ins. Co.*, 206 A.3d 1011, 1016 (N.J. App. Div. 2019). "The Court will apply the plain language of the Policy strictly construing exclusions against the insurer in accord with the objectively reasonable expectations of the insured." *S. Millville Properties LLC v. Westchester Surplus Lines Ins. Co.*, 698 F. Supp. 3d 766, 771 (D.N.J. 2023) (citations omitted). "Any ambiguities in the Policy will be resolved in favor of the insured," *id*. "[h]owever, ambiguities will not be forced

9

into an insurance policy, nor will the words of an insurance policy be artfully construed to include a type of coverage outside the scope and nature of the policy in question," *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020) (citing *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004)).

## A.  Plaintiff Cannot Establish a Fortuitous Loss

The Policy covers "direct physical loss of or damage to Covered Property … caused by or resulting from any Covered Cause of Loss." [Sipple Certif., Ex. C at AMGUARDP000074.] The parties agree that this language makes the Policy an "all-risk" policy, meaning that it only covers "fortuitous losses" proximately caused by an insured peril, unless an exclusion applies. *Victory Peach Grp., Inc. v. Greater New York Mut. Ins. Co.*, 707 A.2d 1383, 1385 (N.J. App. Div. 1998) (citing 43 Am. Jur. 2d Insurance § 505 (1982)); [*see* Def.'s Br. at 13; Pl.'s Br. at 3.] A "fortuitous" loss is one that depends on chance where "neither party knew or contemplated that there was any defect at the time of the issuance of the insurance contract." *Ariston Airline & Catering Supply Co., Inc. v. Forbes*, 511 A.2d 1278, 1282 (N.J. Super. Ct. 1986) (citation omitted). "The burden of establishing a fortuitous loss falls on the insured." *10 E. Washington Ave., LLC v. AmGUARD Ins. Co.*, 2024 WL 1715437, at *11 (D.N.J. Apr. 22, 2024), *appeal dismissed*, 2024 WL 4823881 (3d Cir. Aug. 2, 2024) (citation omitted).

Defendant argues that Plaintiff cannot establish that the loss associated with the 2021 Claim was fortuitous because it was well documented that the motel's roof was

10

suffering from maintenance issues as detailed in the denial of the 2020 Claim. The Court agrees.

It is unrebutted that Defendant's adjuster for the 2020 Claim, Raphael, and Raphael's engineer, Rimkus, determined that the damage to the roof was caused by deferred maintenance issues and normal wear and tear over the course of the roof's lifespan.[4] Rimkus observed "long-term, age-related deterioration, and weathering of the roof system," [Sipple Cert., Ex. F at 10], and concluded that the interior of the motel "sustained water damage due to incremental, repetitive moisture intrusion issues through the aged roof assembly and unsealed openings in the building cladding," [Sipple Cert., Ex. G at AMGUARD 000366.] Plaintiff knew about these defects "at the time of the issuance of the insurance contract," as renewed between the 2020 Claim and the 2021 Claim. *See Ariston Airline*, 511 A.2d at 1282 (relevant time period to determine existence of defects is at the time of the issuance of the insurance contract).

This case is analogous to *10 East Washington*. In that case, AmGUARD denied coverage to the insured under the same businessowner's insurance policy at issue here,

---

[4]   Plaintiff's bald denial of this conclusion is not enough to defeat summary judgment. [Pl.'s RSOMF ¶¶ 16–17.] A summary judgment opponent cannot create a dispute of material fact by relying on mere conclusions. *Sec. & Exch. Comm'n v. Bonastia*, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Plaintiff has failed to present affirmative evidence in the record to rebut AmGuard's findings related to the 2020 claim. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (non-moving party must "must present affirmative evidence in order to defeat a properly supported motion").

11

*see* 2024 WL 1715437, at *6, because its adjuster (also Raphael) and Raphael's engineer determined that the damage to the building's façade was caused by ongoing water intrusions over an extended period of time rather than wind damage. *Id*. at *4. The façade collapsed one year later and AmGUARD and its adjusting team again denied coverage citing the previously found water intrusions. *Id*. at *4–5. The court granted summary judgment to AmGUARD finding that there was no dispute of material fact that the plaintiff was on notice of the façade's poor condition and thus, that the collapse of the façade was not unforeseen. *Id*. at *11.

      Plaintiff's efforts to distinguish *10 East Washington* are unconvincing. It argues that the plaintiff's expert in *10 East Washington* conceded that the building was plagued by long-term water damage and that the plaintiff received an inspection report before purchasing the property which put it on notice that routine building maintenance had been neglected. [Pl.'s Br. at 5.] But here, Halkiadakis *did* note the embrittlement of the roof's shingles which, as reflected elsewhere in the record, is consistent with "age-related deterioration and indicate[s] an end-of-life condition of the roof." [Lilienfeld Report at 3; Halkiadakis Report at 28; SOMF ¶ 50; Pl.'s RSOMF ¶ 50.] And although there is no evidence in the record that Patel ever received an inspection report before purchasing the property indicating issues with the roof, he was clearly aware of the roof's deterioration between 2011 and 2020. AmGUARD and its adjusting team observed significant patchwork on the motel's roof during its investigation of the 2020 Claim, a material fact that Plaintiff does not deny. [Sipple Cert., Patel Depo at 17:4–6; [SOMF ¶¶ 24–25; Pl.'s RSOMF ¶¶ 24–25 (admitting that the roof's patchwork

indicated prior repairs).] The roof's patchwork indicates prior repairs reflecting Patel's awareness of the roof's poor condition and undercuts Plaintiff's argument that the loss was unforeseen. [SOMF ¶¶ 24–25; RSOMF ¶¶ 24–25.]

Plaintiff also argues that AmGUARD's agreement to renew the Policy in June 2021 is evidence that the roof was not in a deteriorated condition when Hurricane Ida hit New Jersey in August 2021. [Pl.'s Br. at 12.] The court in *10 East Washington* rejected a similar argument. "[T]he fact that Defendant allowed Plaintiff to renew the Policy at the same premium and values as prior years … does not change the fact that Plaintiff's prior knowledge of the defects disqualifies it from coverage[.]" *10 East Washington*, 2024 WL 1715437, at *11 n.18. AmGUARD's unrebutted findings regarding the roof's deteriorated condition to deny the 2020 Claim were sufficient to put Plaintiff on notice of the roof's condition when it renewed the Policy and when it lodged the 2021 Claim.

Because there is no dispute of material fact regarding the long-term deterioration of the motel's roof, any loss following Hurricane Ida cannot be said to have been fortuitous. Plaintiff cannot meet its burden to show otherwise. *10 E. Washington Ave.*, at 2024 WL 1715437, at *11 (burden on plaintiff to establish that loss was fortuitous). Therefore, summary judgment is appropriate.

    **B.    Plaintiff Cannot Establish that it Suffered a Covered Cause of Loss Under the Policy**

Even if the Court were to find that the damage to the motel's roof following Hurricane Ida constituted a fortuitous loss, Plaintiff cannot establish that the storm

13

was the proximate cause of that loss because it cannot disentangle the roof's pre-existing maintenance issues from any damage caused by the storm.

The Policy provides that AmGUARD "will pay for direct physical loss of or damage to Covered Property at the premises … caused by or resulting from any Covered Cause of Loss." [Sipple Cert., Ex. C, AMGUARDP 000074.] But a Covered Cause of Loss under the Policy does not include damage to "[t]he interior of any building or structure caused by or resulting from rain … whether driven by wind or not, *unless* … [t]he building or structure *first* sustains damage by a Covered Cause of Loss to its roof or walls through which the rain … enters[.]" *Id.* at AMGUARDP 000075 (emphasis added).] So, to demonstrate that it suffered a Covered Cause of Loss, Plaintiff has to show that Hurricane Ida—independent of other excluded causes including the roof's deteriorated condition—proximately caused the loss. *See Flomerfelt v. Cardiello*, 997 A.2d 991, 1000 (N.J. 2010) ("[I]f the claimed causes, one covered and one not, combine to produce an indivisible loss, our appellate courts have rejected claims for coverage largely because of the allocation of the burden of proof on the insured to demonstrate a covered cause for a loss."); *Brindley v. Firemen's Ins. Co. of Newark, N. J.*, 113 A.2d 53, 56 (N.J. App. Div. 1955) (concluding that because wind and rain were concurrent causes, only one of which was covered, insured could not demonstrate "without resort to sheer conjecture the amount of the particular loss ascribable to the hazard assumed by the carrier"). Put differently, Plaintiff bears the burden of establishing that Hurricane Ida was the "sole or a substantial factor in

causing the loss." *Newman v. Great Am. Ins. Co.*, 207 A.2d 167, 174 (N.J. App. Div. 1965).[5]

Plaintiff cannot meet that burden. It has not introduced sufficient evidence to disentangle any wind damage caused by Hurricane Ida from any previously existing damage to the roof to establish that Hurricane Ida, either solely or substantially, proximately caused the loss. [Def.'s Reply at 6 (Plaintiff "can[not] confirm what damage, if any, resulted in connection with the 2021 Claim versus the 2020 Claim.").]

Plaintiff mostly relies on its expert reports for the conclusion that Hurricane Ida wind speeds proximately caused damage to the roof. [COMF ¶¶ 38–40; Halkiadakis Report at 2.] But Halkiadakis's conclusion that high wind speeds proximately caused damage to the roof is fatally flawed and the Court will exclude his conclusions under Federal Rule of Evidence 702. "Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993)). For expert evidence to be admissible

---

[5] Plaintiff's invocation of New Jersey's Appleman Rule is misplaced. [Pl.'s Br. at 8.] Appleman applies in situations where multiple events, at least one of which is a covered event, occur sequentially in a chain of causation to produce a loss. *Flomerfelt* 997 A.2d at 1000. In *South Millville*, for example, this Court applied Appleman where the theft of copper electrical components (an excluded peril), caused a fire (a covered cause of loss), which was the proximate cause of damage to the insured's building. *S. Millville Properties*, 698 F. Supp. 3d at 775. There was no such causal chain here. The roof's condition and Hurricane Ida's landfall in New Jersey were simultaneous, not sequential events.

under Federal Rule of Evidence 702: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Kannankeril*, 128 F.3d at 806 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–42 (3d Cir. 1994)). "[A]n expert's bare conclusions, unsupported by factual evidence are an inadmissible net opinion." *Faragalla v. Otundo*, 626 F. Supp. 3d 783, 786 (D.N.J. 2022) (citation and internal quotation marks omitted); *H.M. ex rel. B.M. v. Haddon Heights Bd. of Educ.*, 822 F. Supp. 2d 439, 448 (D.N.J. 2011) (An "expert's bare conclusions are not admissible under [the fit requirement] of Rule 702 of the Federal Rules of Evidence.") (alteration in original and citation omitted).[6] Under the net opinion rule, an "expert's testimony should be excluded 'if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture.'" *Faragalla*, 626 F. Supp. 3d at 786 (citation omitted).

---

[6] "[T]he net opinion rule 'is not a federal evidentiary rule and does not form a part of the *Daubert/Kumho* analysis.'" *Snead v. Casino*, 700 F. Supp. 3d 203, 216 n.1 (D.N.J. 2023) (quoting *Zeller v. J.C. Penney Co., Inc.*, 2008 WL 906350, at *7 n.13 (D.N.J. Mar. 31, 2008)). It is "merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702 of the Federal Rules of Evidence." *Zeller*, 2008 WL 906350, at *7 n.13 (citation and internal quotation marks omitted); *see also Smith v. State Farm Fire & Cas. Co.*, 2023 WL 3561406, at *4 n.2 (D.N.J. May 19, 2023) ("While the net opinion rule is not part of the Federal Rules of Evidence, nor is it an explicit factor enumerated by *Daubert*, courts in this [D]istrict have analyzed net opinion arguments under *Daubert*'s fit requirement, or on its own as a separate issue." (alteration added)).

Halkiadakis's report is an impermissible net opinion because it fails to consider the condition of the roof prior to August 2021, *<u>a point Plaintiff does not dispute</u>*. [SOMF ¶ 51; Pl.'s RSOMF ¶ 51.] Considering such facts would have "enable[d] him … to express a reasonably accurate conclusion" that high wind speeds from Hurricane Ida were the proximate cause of the damage to the motel's roof. *Faragalla*, 626 F. Supp. 3d at 786 (citation omitted). By contrast, Defendant's expert, Lilienfeld, did consider the roof's pre-2021 condition in concluding that any damage to the roof was caused by roof age, deferred maintenance, and incremental wind over the lifetime of the roof. [Lilienfeld Report at 3 (considering roof's condition between 2011 and 2021).] By failing to acknowledge the 2020 Claim and its findings, Halkiadakis cannot reliably disentangle the roof's longstanding maintenance issues with any damage substantially or solely caused by Hurricane Ida. [SOMF ¶ 51; Pl.'s RSOMF ¶ 51.] His opinions, thus, would not assist a trier of fact. *Faragalla*, 626 F. Supp. 3d at 786.

And although the Court does not find Altschule's report to be a similarly unreliable net opinion (nor does Defendant challenge it as such), his conclusion that Hurricane Ida's wind speeds reached nearly 70 miles per hour approximately 6.6 miles away from the hotel is not a material fact. Wind speeds at the incident location were closer to 40 miles per hour, as Altschule admits. [Altschule Report at 61–62]. And Plaintiff fails to point to evidence in the record rebutting Lilienfeld's conclusion—who *did* consider the roof's pre-Hurricane Ida condition—that the roof's age-related deterioration made it vulnerable to wind speeds *well below* 60 mph. [*See* Lilienfeld Report at 2.] Thus, the Court finds that Plaintiff cannot establish that any loss

17

sustained during the Hurricane was a Covered Cause of Loss.[7] Summary Judgment is thus appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's Motion for Summary Judgment and **DISMISS** the Complaint **WITH PREJUDICE**. An appropriate Order shall issue.

**March 25, 2025**                                               **s/Renée Marie Bumb**
Date                                                             RENÉE MARIE BUMB
                                                                     Chief United States District Judge

---

[7] And even if Plaintiff could establish that the loss was covered, the Court would find that the Policy's Maintenance, Wear and Tear, and/or the Long-Term Moisture Exclusions bar coverage under the Policy. As described *supra*, the record is replete with evidence that the 2020 Claim and 2021 Claim were denied because of longstanding age-related issues to the roof. [*See* Sipple Certif., Ex. E (noting roof system's poor workmanship during investigation of 2020 Claim); Sipple Certif., Ex. F at 4–8 (describing longstanding maintenance issues).]